IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVIDSON INSTRUMENTS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>PARKER-HANNIFIN CORPORATION,<br><br>Defendant. | CASE NO. 1:26-mc-37<br><br>DISTRICT JUDGE<br>DAVID A. RUIZ<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**MEMORANDUM OPINION AND ORDER** |

Let's say that Company A has filed a lawsuit in which it alleges that it provided Company B with trade-secret technology under a non-disclosure agreement. Company B allegedly later used this information to file a patent application, which "fraudulently identified" Company B employees "as the inventors" of the technology. Company C later acquired Company B for about $8.8 billion. Company C's then-CEO and chair was naturally involved in discussions with the chair of Company B's board about the acquisition. Company A thinks that the premium that Company C paid to acquire Company B was influenced by the trade-secret technology that Company B allegedly appropriated from Company A.

Company A has now sued Company C, alleging trade secret and copyright claims. Company A says that it should be permitted to depose Company C's now-former CEO and ask about the acquisition negotiations and Company C's valuation of Company B and its technology. Company C and the

former CEO don't think that Company A should be allowed to depose the former CEO. Welcome to this dispute.

*Background*

In May 2025, Davidson Instruments, Inc., sued Parker-Hannifin Corporation in the United States District Court for the Eastern District of Texas. Compl., *Davidson Instruments, Inc., v. Parker-Hannifin Corp*., No. 2:25-cv-0520 (E.D. Tex.) (filed May 13, 2025) ("Texas Compl."). Davidson alleged that under a non-disclosure agreement, it provided trade-secret technology to Meggitt SA in 2017. *Id*. at 4, 10–12, 20. According to Davidson, Meggitt later used this information to file a patent application, which "fraudulently identified … Meggitt" employees "as the inventors." *Id*. at 15.

The complaint continues that in 2021 Parker began negotiating to acquire Meggitt. *Id*. at 18–19. The technology that Meggitt allegedly appropriated from Davidson was important to Parker. *Id*. at 19–20. In August 2021, Parker publicly announced a deal to acquire Meggitt. *Id*. at 19. The following month, Meggitt's shareholders approved Parker's bid. *Id*. at 20. The deal closed in 2022 for about $8.8 billion. *Id*.

Parker's then chairman and CEO, Thomas Williams, was involved in the negotiations with Meggitt. The record contains two emails forwarding letters from Williams to Nigel Rudd, chairman of Meggitt's board. *See* Docs.

15-1, 15-2.[1] In the first letter sent on June 4, 2021, Williams offered a specific price per share to complete Parker's acquisition of Meggitt. *See* Doc. 15-1, at 3. In the second letter, dated June 21, 2021 and labeled "fourth proposal … to acquire Meggitt," Williams referenced an "insightful" conversation that he had the previous week with Rudd. Doc. 15-2, at 3. Williams also increased Parker's offer. *Id.*

In its complaint, Davidson claims that Parker is using Davidson's technology, acquired through Meggitt, without authorization. Texas Compl., at 21–23. It has therefore sued Parker, alleged violations of federal and Texas trade secret statutes, plus copyright and antitrust claims. *Id.* at 31–46.

In August 2026, Davidson's counsel served Williams, who apparently resides in this District, with a subpoena noticing his deposition. Doc. 1-1, at 3. Williams is "no longer employed by Parker." Doc. 1-2, at 2. The subpoena provided that the deposition would take place in Cleveland on September 1. *Id.*

Parker moved in this District to quash the subpoena. Doc. 1. In support of its motion, Parker includes Williams's declaration. *See* Doc. 1-2. Williams declares:

> l. I was previously employed by [Parker] from 2003 to 2023, serving as Chairman and CEO from 2015 to 2022 and as Executive Chairman in 2023. I am no longer employed by Parker.

---

[1] When citing the parties' filings in this case, the Court cites the CM/ECF-generated page numbers at the top of each document.

> 2. In my roles as Chairman, Executive Chairman, and CEO of Parker, my employment was limited to matters related to Parker's business interests.
>
> 3. I am not a scientist, nor do I possess any information related to the complex technology at issue in the litigation between Parker and [Davidson].
>
> 4. I possess no unique knowledge relevant to this dispute, and in fact, do not recall having heard of Davidson or this dispute until after I was subpoenaed by Davidson's legal counsel on July 29, 2026.

*Id*. at 2.

Davidson opposes Parker's motion to quash. Docs. 6, 15. Among other things, it supports its opposition with copies of the emails referenced above from Williams to Rudd. *See* Docs. 15-1, 15-2.

Finally, Williams has moved to intervene and join Parker's motion to quash. Doc. 10. That motion is granted.

*Discussion*

Federal Rule of Civil Procedure 45 governs third-party subpoenas. A Court must "quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Additionally, a proposed deponent may seek a court's protection for "good cause" if a deposition subpoena would subject him or her to "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "'To justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and … these limits grow more formidable as the showing of need decreases.'"

*Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, 8A Federal Practice and Procedure § 2036 (3d ed. 2012)). As result, "'even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it.'" *Id.* (quoting Wright & Miller, at § 2036).

It's the movant's burden to show good cause for a protective order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). "'To show good cause, a movant for a protective order must articulate specific facts showing "clearly defined and serious injury" resulting from the discovery sought and cannot rely on mere conclusory statements.'" *Id.* (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).

Some courts have endorsed resort to the "apex doctrine," under which a "party seeking to compel the deposition of a high-ranking executive, [must] carry the burden of showing that [a] deposition is necessary." *Jet Blast, Inc. v. Blue Lake Serv., LLC*, 348 F.R.D. 706, 709 (N.D. Fla. 2025). The animating idea behind the doctrine is that absent its protection, high-ranking officials would be "vulnerable to numerous, repetitive, harassing, and abusive depositions by virtue of their position." *Id.*; *see Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (noting that "courts have 'observed that such discovery creates a tremendous potential for abuse or harassment'") (citation omitted).

The Sixth Circuit, however, has a different perspective. In this Circuit, "to justify a protective order, one of Rule 26(c)(1)'s enumerated harms 'must be illustrated "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."'" *Serrano*, 699 F.3d at 901 (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)). As result, "'a [corporate officer's] bald assertion that being deposed would present a substantial burden'" is not enough to warrant protection. *Id.* (quoting *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x. 900, 907 (6th Cir. 2009)). It is thus error for a court to only consider a corporate officer's knowledge without also considering whether the officer has demonstrated that one of the harms listed in Rule 26(c)(1) will follow if the subpoena is not quashed. *Id.* at 902.

With these principles in mind, the Court turns to Parker's motion to quash and Davidson's opposition. Parker—and by extension, Williams—relies on the apex doctrine and says that Williams has no "unique personal knowledge" of this case. Doc. 1, at 3–4. It adds that Williams's deposition would be cumulative and duplicative of other depositions that Davidson has taken or noticed. *Id.* at 5.

For its part, Davidson notes that although Parker uses the word *burden*, Williams omits in his declaration any mention of how a deposition might burden him. Doc. 6, at 2–3. Davidson also argues that if it applies, the apex doctrine does not apply to former executives. *Id.* at 4. Davidson additionally

accuses Parker of gamesmanship, because Parker knew of Williams's scheduled deposition for a week but only moved to quash a day before the deposition was to take place.[2] *Id*. at 4–5.

In its reply, Parker says it has sufficiently shown that the subpoena would subject Williams to an undue burden. Doc. 13, at 3. It notes that Williams is retired and says that his "involvement with the subject matter of this litigation was limited." *Id*. It also asserts that "Williams was not involved in the details of the technology that is at issue in this litigation." *Id*. According to Parker, others are more knowledgeable about that technology and "are much better positioned to testify on the topics on which Davidson seeks information." *Id.* Parker also asserts that Williams's "limited unique personal knowledge" combined with the fact that others "can provide the discovery Davidson seeks" means that Parker has shown "undue burden." *Id*. at 3–4. Finally Davidson disputes Davidson's claim of gamesmanship.

At the outset, the Court notes that assertions of counsel are not evidence. *See Duha v. Agrium, Inc*., 448 F.3d 867, 879 (6th Cir. 2006). So unsupported assertions of counsel will not figure in the Court's resolution of this dispute.

---

[2] Davidson includes in its opposition a half-hearted alternative request to transfer this dispute to the Eastern District of Texas. Doc. 6, at 1, 6. That request is denied. Neither Parker nor Williams has consented and Davidson hasn't tried to show exceptional circumstances. *See* Fed. R. Civ. P. 45(f). And Davidson has forfeited the request by failing to develop an argument in support of it. *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022).

Having set the table, resolution of Parker's motion to quash is straightforward. Recall that as the movant, it's Parker's burden to show that the Court should quash Williams's subpoena.

Parker first relies on the apex doctrine. Doc. 1, at 3. But it sidesteps the fact that Williams is retired. And it doesn't explain why, even if the doctrine generally applies in this Circuit, it should apply to a former executive.

Further, even if Williams were currently Parker's CEO, a "bald assertion" that the apex doctrine applies will not warrant quashing a subpoena. *Serrano*, 699 F.3d at 901. Instead, the proposed deponent must show a lack of relevant knowledge and one of the harms described in Rule 26(c)(1)—annoyance, embarrassment, oppression, or undue burden or expense. *Serrano*, 699 F.3d at 901. Parker, however, shows neither.

Start with relevant knowledge. Williams in his declaration doesn't say that he has no knowledge of the matters that Davidson would like to question him about. Instead, he says that he lacks "unique knowledge." Doc. 1-2, at 2. Parker expands on this and says that Williams lacks "unique personal knowledge." Doc. 1, at 3–5; Doc. 13, at 1–3, 7. *Unique* is thus a loaded word in this dispute. Neither Rule 26 nor Rule 45, however, require the party seeking discovery to show that the proposed deponent's knowledge is *unique*. Further, Davidson's repeated reference to *unique* knowledge amounts to a tacit admission that Williams has knowledge relevant to the parties' dispute.

And that tacit admission is unsurprising. Davidson's evidence shows that Williams was directly involved in Parker's $8.8 billion acquisition of Meggitt. *See* Docs. 15-1, 15-2.

Parker also focuses on Williams's declared lack of knowledge about the technology at issue here. Doc. 1, at 5; Doc. 13, at 3; *see* Doc. 1-2, at 2. This is red herring. Davidson isn't proposing to depose Williams about how the technology works. Rather, it wants to know about Parker's acquisition of Meggitt and the alleged role Davidson's technology played in Parker's valuation of Meggitt. *See* Doc. 15, at 2; Doc. 19, at 2. The evidence tends to show that Williams has knowledge relevant to that line of inquiry. *See* Docs. 15-1, 15-2. Indeed, given that Parker's acquisition for Meggitt closed for approximately $8.8 billion, it is not surprising that Williams, as Parker's chair and CEO at the time, would have relevant knowledge on that subject.

There's more. Parker also doesn't show that one of the harms described in Rule 26(c)(1) would come to pass. In its motion, it focuses on the burden that it says a deposition would impose. *See* Doc. 1, at 3, 4, 5; *see also* Doc. 13, at 3. But this argument chiefly focuses on the burden that attends forcing an executive to sit for a deposition. *See* Doc. 13, at 3. That concern, however, does not apply because Williams is no longer a company executive.

And to the extent Parker's argument applies more generally, it suffers from two problems. First, Williams in his declaration does not say that a deposition would burden him. This matters because to prevail in its request,

Parker "'must articulate specific facts showing "clearly defined and serious injury" resulting from the discovery sought and cannot rely on mere conclusory statements.'" *Nix*, 11 F. App'x at 500 (citation omitted). Parker has neither presented "specific facts" nor shown a "clearly defined and serious injury."

Second, Parker would collapse *Serrano*'s two-part inquiry into one part. By Parker's lights, lack of knowledge is sufficient to show undue burden. *See* Doc. 13, at 3–4. But if that were the case, the Court in *Serrano* would not have reversed the lower court, which only considered the proposed deponent's alleged lack of knowledge.[3] *See* 699 F.3d at 902.

Parker adds that Williams's deposition would be cumulative and duplicative. Doc. 1, at 5. It does not, however, offer the Court an evidentiary basis to reach this asserted conclusion. And it doesn't point to a rule or precedent that would support quashing Williams's deposition based on the fact that testimony sought is possibly available from other witnesses.

---

[3] If (1) this were a case in which the Court had limited discovery to a narrow jurisdictional question, (2) Williams was years removed from his time as Parker's CEO, and (3) and Davidson had made no "argument that any information from [Williams] would relate to the narrow jurisdictional questions for which discovery was narrowly permitted," then it could be appropriate to quash or modify Williams's subpoena. *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017); Doc. 1, at 3 (relying on *Anwar*). But this circumstance does not apply here.

*Conclusion*

Williams's motion to intervene, Doc. 10, is granted. Parker's motion to quash, Doc. 1, which Williams joins, is denied.

Dated: September 28, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge